## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

|  |  |
|---|---|
| **IN RE** ) | |
| ) | **Case No. 12-02091-TLM** |
| **THOMAS MECHAM RICKS** ) | |
| ) | **Chapter 12** |
| ) | |
| **Debtor.** ) | |
| _____ ) | |

### MEMORANDUM OF DECISION
_____

On August 28, 2012, Thomas Mecham Ricks ("Debtor") filed a voluntary petition for relief under chapter 12, commencing this case.[1] On August 30, 2012, creditor John Wood ("Wood") filed a "Motion to Re-assign [*sic*] Case to Judge Jim D. Pappas," Doc. No. 15 ("Motion").[2] On August 31, creditor D.L. Evans Bank filed a "joinder" in the Motion, as did creditor U.S. Bank on September 4. Doc. Nos. 16, 21.

The premise of the Motion is that the Hon. Jim D. Pappas, Bankruptcy Judge in this District, presided over Debtor's prior bankruptcy case and a related

---

[1] Unless otherwise indicated, all statutory references to chapter and section are to the Bankruptcy Code, Title 11, U.S. Code, §§ 101-1532, and all rule references are to the Federal Rules of Bankruptcy Procedure.

[2] The manner of electronic docketing by Wood improperly characterizes the request as a "Motion to Recuse Judge." No issue of recusal of the undersigned exists under 28 U.S.C. § 455 or the relevant case law.

MEMORANDUM OF DECISION - 1

adversary proceeding, and a subsequent related bankruptcy case and adversary proceeding.[3] Given this history, Wood argues that "judicial economy and the best interests of the estate and creditors would be better served" by a reassignment of the present case to Judge Pappas. Motion at 2. The sole authority cited for the Motion is § 105. *Id.* at 1.

Neither Wood nor the parties joining his Motion have filed any briefing or legal analysis of the requested reassignment. As of the date of this Decision, Debtor, the chapter 12 trustee, and the U.S. Trustee have not responded to the Motion or the joinder by other creditors.

The Court has determined that the Motion can be addressed without further submission and without oral argument, and it does so through this Decision and a related Order.

## DISCUSSION AND DISPOSITION

Pursuant to 28 U.S.C. § 1334, district courts have original and exclusive jurisdiction over all cases under Title 11. Under 28 U.S.C. § 1334(b), district

---

[3] *See In re Thomas M. Ricks*, Case No. 09-00215-JDP (filed as chapter 11 Jan. 29, 2009; converted to chapter 7 June 18, 2010; dismissed Feb. 7, 2011; closed July 10, 2011), and related adversary proceeding, *Ricks v. Kastera*, LLC, Adv. No. 09-06067-JDP (commenced Aug. 26, 2009; chapter 7 trustee substituted as plaintiff July 8, 2010; judgment for plaintiff July 27, 2010; case closed July 8, 2011). *See also In re Ricks Ranches, Inc.*, Case No. 11-03196-JDP (chapter 12, filed Oct. 25, 2011; dismissed March 9, 2012; closed March 12, 2012), and related adversary proceeding, *Wood v. Ricks Ranches, Inc, et al.*, Adv. No. 11-06060-JDP (filed Nov. 15, 2011; dismissed May 30, 2012). *Ricks Ranches, Inc.* was filed after *Ricks* was closed, and that Judge Pappas received the latter case was due to random assignment.

MEMORANDUM OF DECISION - 2

courts have original but not exclusive jurisdiction over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.

Section 157(a) of Title 28 provides: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."[4] In the District of Idaho, the District Court has made such a reference, doing so first in 1984 when that provision of Title 28 was promulgated, and continuing uninterrupted thereafter. *See* Third Amended General Order No. 38 (Apr. 24, 1995).

This background, though unquestioned and for the most part generally understood, is preliminary to a discussion of assignment of cases and proceedings. For all the matters that fall within the district court's jurisdiction under 28 U.S.C. § 1334 and that are referred to the bankruptcy court under 28 U.S.C. § 157(a), the manner of assignment of cases falls to the judges of the bankruptcy court to decide. Section 154 of Title 28 provides:

> (a) Each bankruptcy court for a district having more than one bankruptcy judge shall by majority vote promulgate rules for the division of business among the bankruptcy judges to the extent that the division of business is not otherwise provided for by the rules of the district court.

---

[4] Per 28 U.S.C. § 151, "the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district" and "may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding" except as provided by law or rule or order of the district court.

MEMORANDUM OF DECISION - 3

In Idaho, General Order 145 (Aug. 4, 1998), provides such rules. It assigns cases where the debtor resides in certain counties in the central and eastern part of the District to Bankruptcy Judge Pappas.[5] Cases for debtors residing in counties in the northern portions of the District are assigned to the undersigned.[6] General Order 145 provides further that:

> All bankruptcy cases and all adversary proceedings therein or related thereto, to be filed with this Court on or after July 31, 1998, wherein the debtor(s) reside in the following counties shall randomly be assigned by the Clerk to either Chief Judge Pappas or Judge Myers, for all purposes and proceedings, in such proportion as the Chief Bankruptcy Judge shall from time to time instruct the Clerk: Ada, Adams, Boise, Canyon, Elmore, Gem, Owyhee, Payette, Valley, Washington (and referred Malheur County Oregon cases).

*Id.* at ¶ 4.[7]

The General Order reflects the reality of Idaho's very large geographical District. This requires frequent travel by the judges in order to handle the business of the Court and serve the interests of the citizens and bar. As noted above, the Court sits in five different locations, which minimizes travel and limits expense

---

[5] Court hearings for these cases are regularly scheduled in Pocatello or Twin Falls, Idaho. *See* LBR 5005.1 at Advisory Committee Notes.

[6] Court hearings for these cases are regularly scheduled in Coeur d'Alene or Moscow, Idaho. *Id.*

[7] Though the undersigned became Chief Judge in 2004, the process under this General Order has not changed. The "proportion" referenced in the General Order allows for a roughly equal division of all business of the Court, District-wide, as between the two judges.

MEMORANDUM OF DECISION - 4

for parties in interests and their lawyers. However, the distances involved and the limited availability of air service makes the travel for judges and court staff expensive, time-consuming and inconvenient.

The very nature of bankruptcy cases means many matters will require prompt hearings under the tight schedules and deadlines established by the Code and Rules. And while many cases may proceed to conclusion relatively quickly, others will often span a long period of time with multiple hearings, not to mention trials of related adversary cases. The judge in a given bankruptcy case must therefore be available to hear, on relatively short notice, motions and other matters that arise, and must also be able to provide continuity throughout those cases which are complex and lengthy.

We have, however, only two bankruptcy judges.[8] Assigning one judge to all cases in the northern part of the District and the other judge to all cases in the eastern portion of the District makes good juridical and administrative sense and promotes efficiency in the conduct of the Court's business. However, where both judges are able to and do sit regularly in Boise, they can be assigned – at random – the cases in the southwestern part of the District without sacrificing the necessary availability and the continuity of presiding over an assigned case from start to

---

[8] Weighted case load statistics, which are used by the Judicial Conference of the United States and the Administrative Office of the Courts in evaluating the number of judges per district, suggest that a third judge in this District will not be authorized in the near future.

MEMORANDUM OF DECISION - 5

finish.

The decision to randomly assign cases in the District to the extent feasible was and is intentional. Where it is possible to implement, random assignment is a preferable and salutary approach. As one court stated:

> The random assignment of cases, and the random reassignment in the event of disqualification, has the obvious, commonsensical and beneficial purpose of maintaining the public's confidence in the integrity of the judiciary. The purpose is defeated when cases or motions are assigned, or reassigned, to judges who are handpicked to decide the particular case or motion in question. A system of random assignment is purely objective and is not open to the criticism that business is being assigned to particular judges in accordance with any particular agenda.

*Jenkins v. BellSouth Corporation*, 2002 WL 32818728 at *6 (N.D. Ala. Sept. 13, 2002) (citation omitted).

Given the important role that random assignment plays, any inherent authority to transfer or reassign should be very carefully and circumspectly exercised. In this District, it has traditionally been so.

Cases have been reassigned from one bankruptcy judge to the other where the assigned bankruptcy judge has voluntarily recused himself.[9] As one court observed:

> One must distinguish between recusal and reassignment. In the event

---

[9] For bankruptcy judges, recusal questions are governed by 28 U.S.C. § 455. *Seidel v. Durkin (In re Goodwin)*, 194 B.R. 214, 221 (9th Cir. BAP 1996) (citing *Liteky v. United States*, 510 U.S. 540, 548 (1994)).

MEMORANDUM OF DECISION - 6

> a judge recuses him or herself, the case is returned to a common pool and another random assignment is made.[10] *There is no express power on the part of the assigned judge to reassign a case. He or she may accept it. He or she may recuse. But he or she may not override the random assignment system as mandated by the court's rules or the court's standing orders. They govern. He or she has no power unilaterally to modify the rule. The rules are court rules, not an individual judge's rules.* As provided for in agreed-upon rules of this court, the matter is different, and is handled differently, when there is a pending case, prior in time, with a common issue or common parties, or both, with which the new subsequent case may be consolidated in an approved process by application to either of the randomly assigned judges.

*United States v. Phillips*, 59 F. Supp. 2d 1178, 1185 (D. Utah 1999) (emphasis added).

As this quotation notes, cases may also be reassigned where there is a need to consolidate related pending cases. This Court has at appropriate times and on proper showing done just that. *See*, *e.g.*, Fed. R. Bankr. P. 1015.[11]

The present case presents neither of these circumstances. Rather, the suggestion is one of familiarity, or perhaps the potential efficiency born of such familiarity, providing benefit to such a degree that the regular, prudential process of random assignment should be altered. That suggestion may have some

---

[10] Because there are only two bankruptcy judges in this District, recusal does not result in random assignment but, rather, requires a direct reassignment to the other judge. In the rare case where that judge must also recuse, assignment is made to a judge from outside the District.

[11] Note that Rule 1015(a) is limited to situations where "petitions by, regarding, or against the same debtor are *pending* in the same court," and that a similar limitation to "pending" petitions (and, thus, cases) by or against related debtors exists under Rule 1015(b). The cases and proceedings referenced in the Motion and outlined in note 3, *supra*, are prior, closed matters and not "pending."

MEMORANDUM OF DECISION - 7

instinctive appeal, but does not withstand scrutiny.

For example, even if prior, concluded litigation gave a judge some familiarity with the parties or with the issues dividing them, in the event of later litigation, the litigants must still provide a full and complete record. The record in the new case must stand on its own, and it alone is the foundation on which the Court will rule and appellate courts will review. There are no shortcuts. Wood and the joining creditors have not explained how they perceive judicial economy and efficiency being enhanced by reassignment.[12] In fact, Wood's contention that "Judge Pappas' institutional and personal knowledge of the facts, properties, and issues in the case" supports reassignment[13] flies in the face of the fact that decisions are not made by courts based on personal or prior knowledge of the presiding judge but, rather, on the record and admissible evidence.

By their appointment and retention, each judge is presumed competent to handle the cases and matters assigned to him or her. This is true even if, as is usually the case, that judge lacks prior exposure to the litigants or their disputes. There is an obligation on a judge not to unnecessarily recuse himself or decline a

---

[12] To the extent that prior litigation is viewed as having established matters that are subject to some sort of preclusive effect, the litigants would similarly have to establish a competent record supporting that proposition. Whether that record is presented to the same or different judge is of no consequence.

[13] *See* Motion at 2.

MEMORANDUM OF DECISION - 8

case, and a concomitant "duty to sit" on matters assigned.[14] The Motion accords with neither principle.

In addition, the suggested rationale for reassignment here is rather blinkered. The nature of the adversary process suggests that for every party and its advocate who believe the prior experience of a judge in the handling of a case well suits him or her to hear later cases with the same parties, there is almost certainly another party and its advocate who are less enthused by that possibility. They might prefer not to have the same judge hearing a subsequent case with the same parties and, perhaps, similar issues.[15]

So, what the Court is presented with is a request of several creditors for the specific assignment of a judge in a situation governed instead by random assignment. The request is couched solely in terms of familiarity and efficiency, and does not address the governing procedures or policies. And it is not otherwise persuasively advanced.[16]

---

[14] *See generally In re Jones*, 2002 WL 818275 at *3-5 (Bankr. D. Idaho Apr. 4, 2002).

[15] As noted earlier, there has been no response to the Motion filed by Debtor. The Court will not speculate as to the reasons for that. But it can acknowledge the reality that a party opposing such a requested reassignment is placed in what at the very least is an awkward position.

[16] Wood's attempted invocation of § 105 is of little avail. That section "vests certain equitable powers in the bankruptcy court, but that power is not unrestrained" and instead "is limited in use to implementation of specific provisions of the Code." *In re Ellis*, 441 B.R. 656, 666 (Bankr. D. Idaho 2010) (citations omitted). *See also In re Korn*, 352 B.R. 228, 248 (Bankr. D. Idaho 2006), *aff'd*, 2007 WL 1381807 (D. Idaho Apr. 24, 2007).

MEMORANDUM OF DECISION - 9

At end, it is that failure to consider fully the nature and ramifications of the Motion that is the problem.  Setting aside for the moment situations where *all* affected parties unanimously request reassignment, or situations of consolidation of related *pending* cases, or cases requiring reassignment due to recusal – none of which are presented here – the Motion basically reflects a desire of certain litigants to select the presiding judge.  Without ascribing any improper motive to their request, it is the opinion of the undersigned that this is something that litigants are not entitled to do where random assignment is the operative norm and has established who will preside.

## CONCLUSION

Having evaluated the record and the authorities, and in light of the prudential nature of random assignment where such assignment is provided, the Court concludes that the Motion is not well taken.  The same will be denied by separate order.

DATED:  September 12, 2012



TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 10